IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : : : : | MDL No. 1871 07-md-1871 |
| THIS DOCUMENT APPLIES TO: *Hassan v. GSK* | : : : : | 11-cv-1029 |

**MEMORANDUM OPINION**

**RUFE, J.**                                                                                       **January 20, 2017**

## I.    Introduction

Before the Court are motions filed by Defendant GlaxoSmithKline ("GSK") and Levi Hawkins, the legal representative of Plaintiff Lucinda Hassan's estate.  For reasons that follow, the Court will grant GSK's Motion to Dismiss for Failure to Comply with Pretrial Order No. 236, deny Mr. Hawkins's Motion for an Extension of Time, and dismiss the remaining motions as moot.

## II.   Background

Plaintiff Lucinda Hassan initiated this lawsuit on December 20, 2010, alleging that she suffered cardiovascular injury as a result of her use of the diabetes drug Avandia.  On August 30, 2011, the Court administratively stayed Ms. Hassan's case after it became subject to a Master Settlement Agreement between Ms. Hassan's counsel and GSK.  Ms. Hassan's counsel secured a settlement, which at her request they rejected and successfully appealed to secure a larger

settlement, which Ms. Hassan also rejected.[1]  Ms. Hassan apparently had been submitting "voluminous written demands and legal and medical arguments" to the administrator of the mass settlement without consulting her lawyers,[2] and her lawyers moved to withdraw "when it became apparent that Ms. Hassan elected to accept non-attorney advice that was diametrically opposed to presently available data . . . and that [counsel] was not able to pursue many of the positions and claims and demands insisted upon" by Ms. Hassan.[3]  The Court granted counsel's motion to withdraw on April 22, 2014, and Ms. Hassan filed an amended complaint *pro se* on June 18, 2014.[4]

The amended complaint alleges that Ms. Hassan's Avandia use required her to undergo two coronary artery bypass surgeries in May and September 2003, and caused her to suffer a stroke in May 2011.[5]  Her Avandia use also allegedly caused her to require a third coronary artery bypass surgery in May 2013.[6]  The amended complaint alleges two counts of strict product liability: failure to warn and design defect.[7]

On April 16, 2015, the Court issued Pretrial Order No. 236 ("PTO 236"), which instructed plaintiffs in various Avandia actions, including Ms. Hassan, to produce a Rule 26

---

[1] Doc. No. 6 at 4.

[2] *Id.*

[3] Doc. No. 5 at 2.

[4] Ms. Hassan explained in a status update to the Court that she sought replacement counsel following her counsel's withdrawal, but two law firms declined to represent her because they "did not want to put time and money into my case."  Doc. No. 8 at 2.

[5] Doc. No. 10 (Amended Complaint) ¶ 3.  The Court later granted GSK's motion to strike claims arising from the 2003 injuries as time-barred, leaving only claims stemming from 2011 and 2013 injuries.  *See* Doc. No. 13 (Motion to Strike); Doc. No. 25 (Order granting Motion to Strike).

[6] *Id.*

[7] *Id.* ¶¶ 26-47.

report.[8] PTO 236 required that the report be signed and sworn by a licensed physician, and that it contain the following information:

   a. The plaintiff's name, address, and date of birth;

   b. The name, complete professional address, license number, and curriculum vitae of the expert;

   c. The name, professional address, and license number of any physician(s) who prescribed Avandia to the plaintiff or treated plaintiff for the specified, alleged Avandia-related injuries;

   d. The complete dates on which the plaintiff used Avandia, along with copies of all records relied upon as evidence of use;

   e. A determination that the plaintiff suffered an injury during or after cessation of Avandia usage and identification and description of the specific injury allegedly sustained; the expert shall support his or her determination that such an injury occurred by listing all records reviewed and providing copies of the records relied upon;

   f. The complete dates of onset of the Avandia-related injuries, the dates of all records that document onset of the injuries, and copies of those records;

   g. The expert's opinion that, to a reasonable degree of medical certainty, each alleged injury was caused by Plaintiff's ingestion of Avandia, along with the basis and reasons for holding that opinion and copies of records relied upon; and

   h. All grounds for opinions expressed by the expert and any supporting documents.[9]

PTO 236 also stated that "[i]f any plaintiff fails to timely provide the required Rule 26 Report and Documents, Defendant may send a Notice of Deficiency to the plaintiff's attorney. The deficiency letter shall state that the plaintiff has fourteen (14) days to cure the deficiency,

---

[8] PTO 236 is a so-called "Lone Pine" case management order, which is used to "compel Plaintiffs to present a *prima facie* evidentiary showing in support of their claims before traditional discovery practice [commences]." *Roth v. Cabot Oil & Gas Corp.*, 287 F.R.D. 293, 295 (M.D. Pa. 2012); *see also Morgan v. Ford Motor Co.*, No. 06-1080JAP, 2007 WL 1456154, at *1 (D.N.J. May 17, 2007) (a Lone Pine order "requires that a plaintiff substantiate his cause of action before embarking on a costly lawsuit").

[9] Doc. No. 26 (PTO 236) at 2-3.

and that Defendant will move for dismissal of the plaintiff's claims if the deficiency is not cured."[10]  Pursuant to PTO 236, Ms. Hassan was to submit a Rule 26 Report no later than June 15, 2015.  She did not.  Counsel for GSK sent Ms. Hassan two Letters of Deficiency, on June 16 and July 17, 2015, respectively, but the letters were returned to GSK because Ms. Hassan "failed to claim" them.[11]

On July 20, 2015, Ms. Hassan filed a request for appointment of counsel, which the Court denied.[12]  She attached to the motion a "Rule 26 Report and Documents" and a copy of PTO 236.  Her report does not contain an expert opinion, but rather is compiled and signed by Ms. Hassan.  The report does not comply with PTO 236 because, among other reasons, it is not "signed and sworn by a licensed physician."

GSK moved to dismiss the case based on Ms. Hassan's failure to comply with PTO 236 on August 20, 2015.[13]  On January 28, 2016, Ms. Hassan filed interrogatories and document requests, which GSK subsequently moved to quash as premature.[14]

Ms. Hassan passed away on February 7, 2016.[15]  On May 20, 2016, Levi Hawkins, as legal representative of the estate of his grandmother Lucinda Hassan, moved to substitute himself

---

[10] *Id.* at 3.

[11] Doc. No. 29 (Motion to Dismiss) at 4.

[12] In denying the request, the Court explained: "While in some circumstances it is appropriate for the Court to appoint counsel for *indigent* plaintiffs in civil cases, there is no evidence of record that Plaintiff in this case is indigent. *See Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993); 28 U.S.C. § 1915(e). Furthermore, counsel for plaintiffs in personal injury cases such as this one often agree to represent plaintiffs on a contingency fee basis, which allows even indigent plaintiffs to retain counsel of their own choosing."  Doc. No. 35.

[13] Doc. No. 29 (Motion to Dismiss).

[14] Doc. No. 37 (Motion to Quash).

[15] Doc. No. 38 (Statement Noting Death of a Party).

as the named party in the complaint. Attached to his motion is Ms. Hassan's autopsy report, which appears to be offered as a second attempt to satisfy the requirements of PTO 236.[16]

Mr. Hawkins then filed a motion for leave to file a fourth amended complaint, seeking leave to amend the caption of the complaint to include himself, Adrian J. Wiggins (Ms. Hassan's son), and Lavette Abdelwhaid (Ms. Hassan's daughter).[17] Mr. Hawkins did not attach a proposed fourth amended complaint to the motion. The Court issued an Order on November 4, 2016 denying both the motion to amend and the motion to substitute without prejudice because representative parties such as guardians or executors must be represented by counsel.[18] The Order also stated that "if counsel does not enter an appearance on behalf of the estate by December 23, 2016, the case will be dismissed."[19]

On December 27, 2016, Mr. Hawkins filed a motion for an extension of time to obtain counsel to represent Ms. Hassan's estate. In it, he names various lawyers who have declined representation and their reasons for doing so, and concludes by requesting an extension of time to "obtain counsel and re-obtain the medical records within the statutory limitation noted by this Court."[20] In the alternative, Mr. Hawkins requests that the Court appoint him counsel.

### III. Standard of Review

A court may dismiss an action for failure to comply with a discovery order. Federal Rule of Civil Procedure 37(b)(2)(A)(v) states, in relevant part:

---

[16] *See* Doc. No. 40 at 2 ("In support of Plaintiff, Levi Hawkins Representative of the Estate, claims against the Defendant now files the Autopsy Final Report dated April 16, 2016. The Pretrial Order No. 236 ("PTO 236") requires that plaintiff serve a case-specific expert report that complies with the requirements of Federal Rule of Civil Procedure 26(a)(2) ("Rule 26 Report") which is signed and sworn by a licensed physician. See Exhibit XX [the autopsy report].").

[17] Doc. No. 42.

[18] Doc. No. 49.

[19] *Id.* at 2.

[20] Doc. No. 51 at iii.

**(b) Failure to Comply with a Court Order.**

. . .

***(2) Sanctions in the District Where the Action Is Pending.***

(A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

. . .

**(v)** dismissing the action or proceeding in whole or in part . . .[21]

Additionally, pursuant to Federal Rule of Civil Procedure 41(b), a district court may dismiss an action based on a litigant's failure to comply with a court order or failure to prosecute.[22] Regarding dismissal for failure to comply, the Third Circuit has stated, "dismissal is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff."[23]

Courts in the Third Circuit must consider the following six factors before dismissing a case based on failure to comply: (1) the extent of the noncomplying party's personal responsibility; (2) prejudice to the adversary; (3) a history of dilatoriness by the noncompliant party; (4) the existence of bad faith or willful conduct; (5) the effectiveness of alternative sanctions; and (6) whether the claims are meritorious.[24] "Not all of these factors need be met for a district court to find dismissal is warranted," but the Third Circuit requires that all six factors

---

[21] Fed. R. Civ. P. 37.

[22] Rule 41(b) states: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits." Fed. R. Civ. P. 41.

[23] *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 866 (3d Cir. 1984).

[24] *Id.* at 868-70.

be weighed and has recommended that any doubts be resolved in favor of the party that has failed to comply.[25]

### IV. Discussion

#### A. *Poulis* Analysis

GSK opposes Mr. Hawkins' motions and urges the Court to dismiss the case based on Ms. Hassan's and Mr. Hawkins' failure to comply with Court orders. The Court will discuss each *Poulis* factor in turn.

##### 1. Personal Responsibility

The first *Poulis* factor is an inquiry into the noncompliant party's personal responsibility. Here, Ms. Hassan and Mr. Hawkins are personally responsible for their failure to comply with Court orders because they are not represented by counsel. "[U]nlike a situation in which a dismissal is predicated upon an attorney's error, [a] plaintiff [proceeding] *pro se* [is] directly responsible for her actions and inaction in the litigation."[26] Ms. Hassan and Mr. Hawkins were aware of the requirements of PTO 236, and received the Court's orders. Thus, the first factor weighs in favor of dismissal.

##### 2. Prejudice to GSK

The second *Poulis* factor—whether GSK has suffered prejudice based on the failure to comply—also weighs heavily in favor of dismissal. "[W]hile 'prejudice' for the purpose of *Poulis* analysis does not mean 'irremediable harm,' the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial."[27] Ms. Hassan's and Mr. Hawkins's failure to comply with Court orders has stalled the litigation for a

---

[25] *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 162 (3d Cir. 2003) (quoting *Hicks v. Feeney,* 850 F.2d 152, 156 (3d Cir. 1988)).

[26] *Clarke v. Nicholson*, 153 F. App'x 69, 73 (3d Cir. 2005).

[27] *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003).

considerable time, thereby impeding GSK's ability to litigate the case. Such inaction "frustrates and delays the resolution of this action"[28] and constitutes prejudice.

### 3. Dilatoriness

The third *Poulis* factor is whether there is a history of dilatory conduct. "Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders."[29] The procedural history of this case reveals "consistent tardiness" that amounts to dilatory conduct. As previously noted, Ms. Hassan was ordered to provide a case-specific expert report by June 15, 2015. Nineteen months have since passed. Though Ms. Hassan and Mr. Hawkins have attempted to comply, their submissions fall short of what is required. Moreover, the Court's order that an attorney enter his or her appearance by December 23, 2016 also was not followed. This factor supports dismissal.

### 4. Bad Faith

Even if they have not responded properly, Ms. Hassan and Mr. Hawkins have responded to and attempted to comply with Court orders in some fashion.[30] The Court therefore does not conclude that their conduct constitutes "the type of willful or contumacious behavior which [can be] characterized as 'flagrant bad faith.'"[31] Accordingly, this factor does not weigh in favor of dismissal.

---

[28] *Metro Metals USA v. All-State Diversified Prod., Inc.*, No. 12-CV-1448, 2013 WL 1786593, at *2 (D.N.J. Apr. 25, 2013).

[29] *Briscoe v. Klaus*, 538 F.3d 252, 260 (3d Cir. 2008).

[30] *See* Doc. No. 28, Doc. No. 40.

[31] *Pearson v. Phila. Prison Sys.*, No. CV 16-240, 2017 WL 68575, at *7 (E.D. Pa. Jan. 6, 2017) (citing *Scarborough v. Eubanks*, 747 F.2d 871, 875 (3d Cir. 1984)).

### 5. Alternative Sanctions

The fifth factor is whether alternative sanctions would be more effective than dismissal. The Court has repeatedly warned that failure to comply with its orders may result in dismissal—most recently cautioning that "if counsel does not enter an appearance on behalf of the estate by December 23, 2016, the case will be dismissed"—and at this juncture the Court cannot contemplate an effective alternative sanction. Accordingly, this factor weighs in favor of dismissal.

### 6. Meritoriousness

Regarding the meritoriousness of Ms. Hassan's claims, the logical conclusion to be drawn from the repeated failures to produce a Rule 26 expert report is that Ms. Hassan was unable to secure a case-specific expert report showing causation because her claims lacked merit. Moreover, Ms. Hassan's counsel moved to withdraw in part because "presently available data and information do not support the great majority of Plaintiff's positions" and they were "not able to pursue many of the positions and claims and demands insisted upon by the Plaintiff."[32] This explanation in support of withdrawal further suggests that Ms. Hassan's claims may lack merit. Accordingly, the sixth *Poulis* factor weighs in favor of dismissing Ms. Hassan's complaint with prejudice.

### 7. Weighing the *Poulis* Factors

In evaluating the *Poulis* factors, the Court notes that no factor is dispositive, and there is no "magical formula" or "mechanical calculation."[33] In fact, "not all of the *Poulis* factors need be satisfied."[34] In this case, giving Ms. Hassan and Mr. Hawkins the benefit of the doubt, every

---

[32] Doc. No. 3-1 (Motion to Withdraw) at 2.

[33] *In re Asbestos Prod. Liab. Litig. (No. VI)*, 718 F.3d 236, 246 (3d Cir. 2013).

[34] *Id.*

9

factor except bad faith weighs heavily in favor of dismissal. Accordingly, the Court finds that dismissal with prejudice is appropriate in this case.

### B. Motion for Extension of Time

Mr. Hawkins urges the Court to grant an extension of time to retain counsel, or alternatively to appoint him counsel. The Court has afforded Ms. Hassan and Mr. Hawkins ample time to retain counsel, and has explained its reasons for declining to appoint counsel.[35] Moreover, the Court was explicit in its most recent order that if counsel did not enter an appearance by December 23, 2016, the case would be dismissed. The motion for an extension of time will therefore be denied.

### IV. Conclusion

For the reasons discussed above, GSK's motion to dismiss will be granted and the complaint will be dismissed with prejudice. Mr. Hawkins' Motion for Extension of Time will be denied, and GSK's Motion to Quash, Mr. Hawkins' Motion to Compel and will be dismissed as moot. An appropriate Order follows.

---

[35] *See* Doc. No. 35 ("While in some circumstances it is appropriate for the Court to appoint counsel for *indigent* plaintiffs in civil cases, there is no evidence of record that Plaintiff in this case is indigent. *See Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993); 28 U.S.C. § 1915(e). Furthermore, counsel for plaintiffs in personal injury cases such as this one often agree to represent plaintiffs on a contingency fee basis, which allows even indigent plaintiffs to retain counsel of their own choosing.").